***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner and in a Pre-Trial Agreement as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Defendant is a duly qualified self-insured.
3. An employee-employer relationship existed between the parties at all relevant times. Plaintiff was employed by defendant at its facility in Plymouth, North Carolina, from 26 November 1951 to 2 August 1998.
4. Plaintiff was last injuriously exposed to asbestos during plaintiff's employment with defendant, Weyerhaeuser Company, and specifically, that plaintiff was exposed to asbestos for 30 days within a seven month period, as is required by N.C. Gen. Stat. § 97-57.
5. It is stipulated that Defendant manufactures paper and paper products such as paper for crafts, paper bags, boxes and pulp for baby diapers. The approximate size of Defendant's plant in Plymouth, North Carolina, is of a mile long. The entire facility is built on approximately 350 acres and encompasses about 20 different buildings. The newest building was built in the 1960's and the vast majority of the insulation used in the original construction of the buildings was asbestos containing. There are steam-producing boilers used at the facility in Plymouth, North Carolina. In addition, there are hundreds of miles of steam pipes that were covered with asbestos insulation. The heat coming off the steam pipes is used, among other things, to dry the wet pulp/paper.
6. Plaintiff has worked as a laborer, helper, assistant boiler operator and boiler operator during his years of employment with Defendant. While he worked in the boiler areas, he was exposed to asbestos insulation materials that were loose and falling off the overhead pipes and boilers. He was often in the vicinity of the pipe fitters that removed insulation in order to work on the pipes. He would notice the asbestos dust in the air when they were working on the pipes. He was heavily exposed when he had to use a high-pressure air hose to blow down the floors, which created clouds of dust that he inhaled from the insulation materials. He did not wear a respirator in the normal performance of his job activities.
7. Plaintiff's income 52 weeks prior to his diagnosis of asbestosis on 9 December 1997 was $60,418.00, which is sufficient to justify the maximum rate allowable under the North Carolina Workers' Compensation Act for the diagnosing year, which is $512.00.
8. Plaintiff contends that he is entitled to an award of a 10% penalty pursuant to the provisions of N. G. Gen. Statute § 97-12, and defendant agreed that should the claim be found compensable, defendant agreed by compromise to pay an amount of 5% of all compensation, exclusive of medical compensation, as an award of penalty pursuant thereto.
9. The parties agreed further that should plaintiff be awarded compensation, the undersigned may include language removing plaintiff from further exposure pursuant to N.C. Gen. Stat. § 97-62-5(b).
10. The parties further agreed that should the undersigned determine N.C. Gen. Stat. §§ 97-60 through 97-61.7 to be unconstitutional, additional testimony could be offered by the parties on the issues of loss of wage earning capacity and/or disability.
11. Subsequent to the hearing before the Deputy Commissioner, the transcripts from the depositions of the following medical experts were submitted for review:
A. Dr. Albert Curseen [June 23, 2000 and July 28, 2000]
B. Dr. James Merchant [May 15, 2000 and August 23, 2000]
C. Dr. Phillip Lucas [August 22, 2000]
D. Dr. Richard Bernstein [January 18, 2000 and July 27, 2000]
E. Dr. John Wu [August 15, 2000]
F. Dr. James C. Johnson [January 24, 2000 and August 24, 2000]
G. Dr. Allen Hayes [February 17, 2000 and August 23, 2000]
H. Dr. Michael DiMeo [April 11, 2000, May 25, 2000, August 7, 2000]
 ***********
Based upon all the competent evidence adduced at the hearing and the reasonable inferences therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. This matter came on for hearing before the Commission after plaintiff's first examination and medical reports establishing that he has asbestosis. Plaintiff was diagnosed with asbestosis on 9 December 1997, and he retired from employment with defendant on 2 August 1998. At this first hearing the Commission is limiting its determination to whether plaintiff has asbestosis and plaintiff is entitled to a removal order and 104 weeks of compensation and medical benefits.
2. Plaintiff has contracted asbestosis and asbestosis-related pleural disease as a result of his injurious exposure to the hazards of asbestos while employed by defendant, Weyerhaeuser Company.
3. Plaintiff was employed by defendant, Weyerhaeuser Company, at its facility in Plymouth, North Carolina, from 26 November 1951 to 2 August 1998.
4. Plaintiff has worked as a laborer, helper, assistant boiler operator and boiler operator during his years of employment with Defendant. While he worked in the boiler areas, he was continuously exposed to asbestos insulation materials that were loose and falling off the overhead pipes and boilers. He was often exposed to asbestos dust when pipe fitters removed deteriorating asbestos insulation from pipes in his vicinity. He was heavily exposed to asbestos dust when he used a high-pressure air hose to blow down the floors, creating clouds of dust from asbestos and other sources. He did not wear a respirator in the normal performance of his job activities.
5. Plaintiff was continuously exposed to asbestos containing materials on a regular basis for more than thirty working days or parts thereof inside of seven consecutive months from 1951 to the date of his retirement on 2 August 1998.
6. Dr. Dennis Darcey of the Division of Occupational 
Environmental Medicine of Duke University examined plaintiff on 9 December 1997. Plaintiff gave Dr. Darcey a history of working for defendant as a laborer, helper, assistant boiler operator and boiler operator. In the boiler area plaintiff was exposed to asbestos insulation materials which were loose and falling off the overhead pipes. Plaintiff was also exposed to asbestos dust from insulation materials when he removed ashes from the boilers. Plaintiff used a high pressure hose to clean floors which resulted in clouds of dust which plaintiff inhaled. Plaintiff reported to Dr. Darcey that he believed the dust contained asbestos from insulation materials. When Dr. Darcey examined plaintiff, plaintiff reported shortness of breath with exercise and was unable to climb more than two to three flights of steps before "giving out." He was able to continue performing his job duties, but had to occasionally stop to rest and catch his breath.
7. Dr. Darcey reviewed a chest x-ray and a CT scan taken on 16 September 1997. He found parenchymal abnormalities "including irregular opacities, shape and size, t/t, in the middle and lower lung zones bilaterally with a I/0 profusion." He further found pleural plaques bilaterally on the chest wall. It was the opinion of Dr. Darcey that plaintiff has pleural plaques consistent with asbestos exposure and mild interstitial changes consistent with early mild asbestosis.
8. Dr. Albert Curseen, a pulmonologist at Lake Norman Center for Breathing Disorders saw plaintiff on 30 August 1999 for an evaluation. After a full physical evaluation and performance of pulmonary function tests, Dr. Curseen was of the opinion that plaintiff has asbestosis. He classified plaintiff as having a Class 3 Level of AMA Respiratory Impairment.
9. Dr. James C. Johnson of Piedmont Radiology in Salisbury, a radiologist and B-reader, interpreted a CT scan and chest x-ray dated 16 September 1997. It was Dr. Johnson's opinion that plaintiff has pleural plaque and interstitial changes which would be consistent with asbestos exposure and possible asbestosis given appropriate exposure history and clinical findings.
10. A follow up CT scan and chest x-ray were performed on 26 August 1999, and were interpreted by Dr. Fred Dula of Piedmont Radiology in Salisbury, a radiologist and B-reader. Dr. Dula reported that the findings were stable since the prior study and were consistent with mild asbestosis.
11. Dr. L.C. Rao, a NIOSH B-reader at Pulmonary Medicine Associates, reviewed the chest x-ray dated 16 September 1997. Dr. Rao reported irregular opacities present in the lower and middle lung zones bilaterally and diaphragmatic pleural plaques and circumscribed chest wall pleural thickening bilaterally. It was Dr. Rao's conclusion that with a significant exposure history to asbestos dust, these finding are consistent with the diagnoses of bilateral interstitial fibrosis due to asbestosis, asbestos associated pleural fibrosis bilaterally and diaphragmatic plaques bilaterally.
12. Dr. Richard C. Bernstein, a B-reader at Pulmonary Critical Care Medicine, reviewed the chest x-ray and CT scan dated 26 August 1999. He reported parenchymal and pleural abnormalities consistent with pneumoconiosis on the chest x-ray. On the CT scan, Dr. Bernstein reported increased interstitial markings throughout both lung fields and asbestos related pleural plaques present.
13. Dr. John Wu, a B-reader, reviewed the chest x-ray dated 16 September 1997. He reported parenchymal and pleural abnormalities consistent with pneumoconiosis.
14. Dr. George L. Grauel, a B-reader, reviewed the chest x-ray dated 26 August 1999, and identified within the mid and lower lung zones a fine to medium irregular opacity pattern. Dr. Grauel noted that the opacities may be associated with an underlying pneumoconiosis. Furthermore, he identified "en profile pleural plaque" along both lateral chest walls.
15. James A. Merchant, M.D., Ph.D., B-reader and Dean of the University of Iowa, reviewed the chest x-ray dated 26 August 1999. He reported pleural and parenchymal abnormalities consistent with pneumoconiosis in the lower lung zones.
16. Dr. Phillip Lucas, a NIOSH B-reader and radiologist, also reviewed the chest x-ray dated 26 August 1999. It is Dr. Lucas' opinion that there are "bilateral pleural and interstitial fibrotic changes consistent with asbestosis in a patient who has had an adequate exposure history and latent period."
17. Dr. Caroline Chiles, a NIOSH B-reader and Professor of Radiology at Wake Forest School of Medicine, reviewed the CT scan dated 26 August 1999. She reported multiple non-calcified pleural plaques seen bilaterally consistent with asbestos exposure and minimal fibrosis in the lower lungs which may represent asbestosis in the appropriate clinical setting.
18. Dr. Michael DiMeo, a panel physician, examined plaintiff on 19 October 1998 at the request of the North Carolina Industrial Commission. Dr. DiMeo concluded that plaintiff has had significant asbestos exposure, but was uncertain in his report whether or not there has been significant injury from the asbestos exposure. He recommends that a repeat CT scan be done in order to document the progression of pleural thickening and other asbestos related findings.
19. Subsequent to Dr. DiMeo's report, plaintiff had a repeat CT scan performed at Rowan Regional Medical Center which was interpreted by both Dr. Dula and Dr. Chiles as consistent with asbestos exposure and asbestosis.
20. It was the testimony of Dr. Allen Hayes that the preponderance of the evidence by the B-readers is that plaintiff may well have some parenchymal evidence that would be consistent with asbestosis and that he cannot exclude the possibility of parenchymal abnormalities based on his review of the 1997 CT scan.
21. Based on the greater weight of the evidence, plaintiff suffers from asbestos related pleural disease and asbestosis as a result of many years of exposure to the hazards of asbestos dust throughout his period of employment with defendant from 26 November 1951 to 2 August 1998. Defendant has not admitted that plaintiff suffers from asbestosis. Defendant has offered no evidence to refute the findings of the doctors discussed herein. The equivocal medical reports of Dr DiMeo and Dr. Hayes do not provide sufficient grounds to support defendant's failure to admit asbestosis in this case. Plaintiff's pulmonary impairment is permanent and is likely to progress. Plaintiff would benefit from medical monitoring, evaluation and some treatment in the future as a result of his asbestosis and asbestos related pleural disease. Further, medical monitoring is reasonably necessary due to his increased risk of developing lung and other asbestos related cancers.
22. Although plaintiff had retired from employment at the time the Deputy Commissioner's 21 November 2000 Order of Removal was issued, plaintiff was employed by defendant on 9 December 1997, the date he was diagnosed with asbestosis. There is insufficient evidence at this time to determine whether plaintiff's decision to retire was based upon his own desire to remove himself from further exposure to asbestos or whether plaintiff intends to continue to work after retirement. No lay testimony was taken in this case. However, based upon the evidence of record and the Commission's finding that plaintiff has asbestosis as a result of his exposure to the hazards of asbestos throughout his employment with defendant and the removal statutes purpose of removing workers from future employment where further asbestos exposure might occur, the Full Commission is required to issue an Order of Removal for plaintiff, pursuant to N.C. Gen. Stat. § 97-61.5.
23. Plaintiff's average weekly wage was sufficient to entitle him to the maximum workers' compensation rate of $532.00 for 1998, the year of his retirement.
24. The provisions of N.C. Gen. Stat. § 97-60 et seq. are not unconstitutional.
25. Plaintiff seeks attorney's fees from defendant in this case on the grounds that defendant defended this claim without reasonable ground. This issue should be reserved for subsequent determination at the final hearing in this matter.
 ***********
Based upon the stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff contracted the occupational diseases of asbestosis and asbestos related pleural disease as a result of his employment with defendant. N.C. Gen. Stat. §§ 97-53(24) and 97-62.
2. Plaintiff was last injuriously exposed to the hazards of asbestos dust while employed by defendant from 26 November 1951 to 2 August 1998, for as much as 30 working days or parts thereof, within seven consecutive months, which exposure proximately augmented his asbestosis. N.C. Gen. Stat. § 97-57; Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000); Haynes v. Feldspar ProducingCo., 222 N.C. 163, 22 S.E.2d 275 (1942); Barber v. Babcock WilcoxConstruction Company, 101 N.C. App. 564, 400 S.E.2d 735 (1991).
3. N.C. Gen. Stat. § 97-61.5 provides in pertinent part that following a first hearing determination by the Industrial Commission that a claimant has asbestosis, based upon either medical evidence or by agreement of the parties, the Commission "shall by order remove the employee from any occupation which exposes him to the hazards of asbestosis . . ." and that upon removal the employee shall be entitled to "weekly compensation equal to sixty-six and two-thirds percent of his average weekly wages . . . which compensation shall continue for a period of 104 weeks." In the instant case, the Commission has found and concluded that plaintiff has contracted asbestosis and asbestos related pleural disease as a result of his employment with defendant; and, that he was last injuriously exposed to asbestos during his employment with defendant and that the exposure was for 30 working days within a seven month period; and that should plaintiff be awarded compensation, an Order of Removal is appropriate to protect plaintiff from further exposure. Accordingly, the Commission hereby issues an Order of Removal. Id.
4. While it has been determined that a retiree who retired prior to receiving a diagnosis of asbestosis is not entitled to an order of removal and the subsequent award because he no longer faces the possibility of exposure, see Austin v. General Tire, 354 N.C. 344,553 S.E.2d 680 (2001), in this case plaintiff did not retire until approximately eight months after being diagnosed with asbestosis. It is not clear from the evidence whether plaintiff's decision to retire was based on his asbestosis and asbestosis related pleural disease, or what plaintiff's plans are. It is clear that plaintiff constructively removed himself in fact from further exposure to the hazards of asbestos when he retired after being diagnosed with asbestosis. It has long been recognized that the purpose of the order of removal is not only to stop continuing exposure of the employee to asbestos fibers, but also to ensure that the employee who continues or returns to work avoids any future exposure. See Roberts v. Southeastern Magnesia and Asbestos Co.,61 N.C. App. 706, 301 S.E.2d 742 (1983). It has also long been recognized that the award of 104 weeks of compensation has the additional purpose to compensate the employee for the incurable nature of the disease.Honeycutt v. Carolina Asbestos Co., 235 N.C. 471, 70 S.E.2d 426 (1952).
5. Pursuant to N.C. Gen. Stat. § 97-61.5, the weekly amount of plaintiff's 104 weeks of compensation is to be based upon his "average weekly wages before removal from the industry, but no more than the amount established annually to be effective October 1 as provided in G.S. § 97-29. . . ." Plaintiff's wages were sufficient to entitle him to the maximum compensation rate permitted under the Act for the year 1998, the year plaintiff retired. Therefore, plaintiff is entitled to 104 weeks of compensation as a result of his diagnosis of asbestosis at the weekly benefit rate of $532.00. N.C. Gen. Stat. § 97-61.5; Robertsv. Southeastern Magnesia and Asbestos Co., 61 N.C. App. 706, 301 S.E.2d 742
(1983).
6. The issue of the constitutionality of N.G. Gen. Stat. § 97-60 etseq. has been raised by defendant and ruled upon by the North Carolina Court of Appeals. In Jones v. Weyerhaeuser Co., 141 N.C. App. 482,539 S.E.2d 380 (2000), disc. review denied, 353 N.C. 525, 549 S.E.2d 858
(2001), and in Clark v. ITT Grinnell Industrial Piping, Inc.,141 N.C. App. 417, 539 S.E.2d 369 (2000), the Court ruled unanimously that the provisions of N.C. Gen. Stat. § 97-61.5 are not unconstitutional.
7. Plaintiff is entitled to have defendant pay for such medical expenses incurred or to be incurred as a result of plaintiff's asbestos related pleural disease and asbestosis as may be required to monitor, provide relief, effect a cure or lessen plaintiff's period of disability. N.C. Gen. Stat. §§ 97-25, 97-59.
8. Plaintiff is entitled to undergo subsequent examinations as provided by law, pursuant to the provisions of N.C. Gen. Stat. § 97-61.1 etseq. and is further entitled to any additional benefits due to plaintiff which shall be determined after additional examinations and hearings.
9. By agreement of the parties, plaintiff is entitled to recover a penalty of 5% of any compensation due him exclusive of medical compensation. By further agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
10. Plaintiff's claim for attorney's fees from defendant on the ground that defendant unreasonably defended this claim pursuant to N.C. Gen. Stat. § 97-88.1 is hereby held in abeyance until the final award is issued in this claim.
11. This claim must be remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy shall be addressed at a subsequent hearing before a deputy commissioner.
 *********** ORDER OF REMOVAL
Plaintiff is hereby ordered to be removed from any occupation which further exposes him to the hazards of asbestos. N.C. Gen. Stat. §97-61.5(b).
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission makes the following:
 AWARD
1. Defendant shall pay to plaintiff compensation for 104 weeks as a result of his contraction of asbestosis, and asbestos related pleural disease while employed by defendant, at a weekly rate of $532.00. Said sum shall be paid in a lump sum to plaintiff without commutation subject to an award of attorney's fee.
2. Defendant shall pay an additional weekly sum of 5% of the weekly compensation awarded in Paragraph 1 above to plaintiff which shall also be paid in a lump sum. As to any future weekly compensation or other compensation due, defendant shall increase the amount of such weekly compensation and/or lump sum compensation awarded, by 5%. As per agreement of the parties, defendant shall be subjected to a late penalty pursuant to N.C. Gen. Stat. § 97-18.
3. Defendant shall pay all medical expenses incurred or to be incurred when bills for the same have been approved, in accordance with the provisions of the Act.
4. Plaintiff shall undergo additional examinations as provided by law.
5. A reasonable attorney's fee of 25% of the compensation due plaintiff as was awarded in paragraphs 1 and 2 above is approved for plaintiff's counsel. Twenty-five percent of the lump sum due plaintiff shall be deducted from that sum and paid directly to his counsel.
6. Defendant shall pay the costs of this proceeding.
 *********** ORDER REMANDING
This claim is hereby remanded to a deputy commissioner for further hearing (if necessary) following subsequent examinations as required under N.C. Gen. Stat. § 97-61 et seq. Plaintiff's eligibility for further indemnity compensation under the Act beyond the 104 weeks awarded herein and any other issues in controversy shall be addressed at the hearing before a deputy commissioner.
This the ___ day of January, 2003.
 S/____________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
DISSENTING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER